CULPEPPER, Judge.
Plaintif f seeks to terminate a trust created for her benefit by her late husband, Richard T. Harriss, Jr. In the alternative, she seeks to invade tne principal of the trust to the extent of $40,000 to pay outstanding bills. From an adverse judgment on the merits, plaintiff appealed.
The facts show that plaintiff’s husband died on August 26, 1959. His will leaves his entire estate in trust for the benefit of his wife and children, in the proportion of one-fourth to his wife and various portions to each child. As to the wife, the term of the trust is the duration of her natural life. As to the children, respectively, the term is ten years from the date of the death of the settlor, or upon the death of the beneficiary, provided that in any event the trust terminates as to all beneficiaries, except the wife, on the date the youngest beneficiary attains the age of 25 years.
During the term of the trust, the trustee is authorized to pay to each child or his legal representative, for his support, education, etc., the income derived from his proportionate share of the principal. And on termination of the trust as to each child, he receives his proportionate share of the principal.
*332 Of particular relevance here is a provision for the invasion of the principal for the benefit of any beneficiary, including the wife:
“During the term of the trust, the trustee, in his uncontrolled discretion, is authorized to pay or deliver to any one of the beneficiaries, or to any person for the account of any one of the beneficiaries, such part of the principal of that beneficiary’s trust estate as in the trustee’s opinion may be necessary for the higher education of the beneficiary, or in case of serious illness, surgical operation, or other grave emergency." (Emphasis supplied)
The circumstances allegedly justifying termination of the trust or, alternatively, invasion of principal are briefly summarized from plaintiff’s own testimony as follows: In 1960 Mrs. Harriss suffered two fractured vertebrae and injured her neck in an automobile accident. Also in 1960, she developed cirrhosis of the liver and diabetes. From 1960 until 1964, she was hospitalized many times in serious condition and incurred large medical expenses. In 1965 she was required to wear a steel brace for her back. Also in 1965, she began to consult a psychiatrist. From 1965 to 1970 she periodically saw a psychiatrist and also attended Alcoholics Anonymous for drinking problems. In 1969 she had a hysterectomy. In 1970 Mrs. Harriss was confined to DePaul Psychiatric Hospital for a complete nervous breakdown. In December of 1970 she had back problems from a pinched nerve. During all of this period of time her medical bills totaled about $50,000.
Mrs. Harriss also alleges many expenses arising from legal problems. There was litigation over the community property settlement, which was not completed until about 1967. She retained attorneys in Baton Rouge and New Orleans. This litigation resulted in a suit against her by the attorneys over legal fees, Roos and Roos v. Way, 234 So.2d 489 (La.App., 3d Cir. 1970).
Mrs. Harriss has also experienced many marital problems. In 1960 she married Gene Wheelis, and after he tried to kill her with a rifle she divorced him. Then she married Jack Way, with whom she lived for four years before divorcing him because of his refusal to work. She then married Lynwood Hightower, from whom she is presently separated.
As to family problems, Mrs. Harriss says she is now burdened with the care of her father and mother, both of whom are in ill health and dependent on her for support.
In addition, Mrs. Harriss has had many business problems. She lost $25,000 in the Shamrock Restaurant. The home of her parents burned in 1970, requiring $10,000 to rebuild it.
The record shows that Mrs. Harriss has already invaded the principal several times on joint petition with the trustee. The first was in May, 1968 when the court authorized the sale of 393 shares of corporate stock of Texaco, Inc. to pay debts owed by Mrs. Harriss in the sum of $74,650. Next, in July of 1968, 250 shares of the corporate stock of Standard Oil Company of New Jersey were sold to pay debts totaling about $18,000. In September of 1969 various shares of corporate stock were sold to pay debts totaling about $42,000. A statement attached to this petition shows the value of plaintiff’s principal at that time to be about $280,000. In December of 1970, various shares of corporate stock were sold to pay debts totaling about $20,000. A statement shows the value of plaintiff’s principal at that time to be about $224,000. The last invasion of the principal was on July 23, 1971, when the court, again on joint petition, authorized the sale of corporate stock to pay debts totaling $10,000.
Mrs. Harriss filed the present petition on February 29, 1972, naming the trustee *333 as a defendant since it refused to join her. She alleges she has outstanding bills in the sum of about $40,000, and that her income from the trust is only $500 a month. The evidence shows it is actually about $800 per month.
Plaintiff’s principal demand is that the trust be terminated under LSA-R.S. 9:2026 which provides:
“The proper court may order the termination or modification of a trust, in whole or in part, if, owing to circumstances not known to a settlor and not anticipated by him, the continuance of the trust unchanged would defeat or substantially impair the purposes of the trust.”
Mrs. Harriss argues that the settlor could not and did not anticipate the health, marital, business and family problems which have caused her these great expenses. And that to continue the trust would defeat its purpose, which is to provide for her financial needs during the remainder of her natural life.
We agree that the purpose of the trust is to maintain and support Mrs. Harriss for the duration of her natural life. But the settlor did anticipate that his wife might have financial problems. This is indicated by the provision that as to her the term of the trust is for her life, but as to the children the term is much shorter. The set-tlor’s foresight has proven to be correct. Mrs. Harriss has already invaded the principal several times. It is obvious that further invasions would reduce the principal to the extent that she would no longer have sufficient income from the trust for the bare necessities of life. The termination of the trust would not accomplish its purpose. On the contrary, this would defeat its primary purpose.
The alternative demand for invasion of the principal is based on the above quoted provisions of the trust and LSA-R.S. 9:2068, B, which provides:
“B. If the same person is beneficiary of both income and principal, invasion of the accumulated income or principal held for that beneficiary may be authorized by the trust instrument and full discretion to invade may be conferred on the trustee, without the necessity for prescribing objective standards.”
Plaintiff argues that since she is the income and principal beneficiary, the trustee has the power and the duty, both under the trust instrument and the statute, to invade the principal to meet this grave emergency.
The same reasoning which applies to the demand for termination of the trust also applies to the alternative demand for invasion of the principal. Both the trustee and the district judge correctly concluded that in view of the history of Mrs. Harriss’ problems, her past invasions of the principal and the amount of principal remaining, the purposes of the trust would be defeated or seriously impaired by further invasion. This case is similar to Succession of Heymann, 240 So.2d 905 (La.App., 4th Cir. 1970) in which the court held:
“Clearly, it is an invasion of the corpus, rather than a continuance of the trust, which would defeat the purposes of the trust. The value of the 3,000 shares of stock ordered transferred to plaintiff in rule by the judgment appealed from is more than half the value of the entire corpus. Invasion, simply for the purpose of permitting the beneficiary to live for a few years as he has lived in the past, a standard he can afford no longer, would render this spendthrift trust meaningless.”
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.